2004 ND 111

**Marcia FAST and Gary Fast, Plaintiffs and Appellants**

v.

**STATE of North Dakota, Defendant and Appellee.**

**No. 20030310.**

Supreme Court of North Dakota.

June 3, 2004.

Steven M. Bitz (argued) and David D. Schweigert (appeared), Bucklin, Klemin & McBride, Bismarck, ND, for plaintiffs and appellants.

Jean R. Mullen, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]   Marcia and Gary Fast appealed from summary judgment dismissing their negligence action against the State. We affirm.

I

[¶ 2]   Marcia and Gary Fast traveled to Minot from Frazer, Montana, on April 14, 2000.   A spring snowstorm occurred in Minot on April 13 and April 14, and there was snow on the ground when the Fasts arrived at approximately 9:00 p.m. on April 14.   Upon their arrival in Minot, the Fasts visited their granddaughter at Pioneer Hall on the Minot State University ("MSU") campus.   As the Fasts were leaving Pioneer Hall around 1:00 a.m. on April 15, 2000, Marcia Fast slipped and fell on ice on the sidewalk leading to the parking lot.   She broke her right ankle as a result of the fall.   The record indicates that, following the snowstorm, MSU cleared snow from the sidewalk using a Bobcat with a bucket.   Photographs taken shortly after Ms. Fast fell indicate a small finger of snow remained on the sidewalk as a result of MSU's snow removal efforts, and a

nearby area of the sidewalk had a low area in which melting snow pooled and subsequently froze ("pooled ice").

[¶ 3] The Fasts sued the State, alleging negligence for failing to properly remove snow and ice accumulations from the sidewalk and warn individuals of the hazardous condition. The State moved for summary judgment. The district court initially denied the State's motion because it determined a genuine or material issue of fact existed regarding where Ms. Fast fell. The State moved for reconsideration, claiming the Fasts did not submit any admissible evidence indicating Ms. Fast fell on the pooled ice instead of on ice located just below the nearby finger of snow that remained on the sidewalk. The State contended the district court incorrectly relied upon a conflict between Ms. Fast's deposition testimony and unsupported allegations in the Fasts' pleadings when it determined a material issue of fact existed regarding where Ms. Fast fell. Upon reconsideration, the district court granted summary judgment in favor of the State, concluding the only competent, admissible evidence—photos from Ms. Fast's deposition in which she marked the location of her fall—indicated she fell just below the finger of snow on the sidewalk and not on the pooled ice. The district court concluded:

> that there is no duty to completely remove snow and ice from sidewalks and that liability does not attach when injuries are sustained in falls where ice forms from melting snow that has been piled as a result of snow removal efforts. Deposition testimony of Minot State University maintenance employees explained the University's snow and ice removal policies, and photographs taken right after the incident and later in the morning of the same day of the incident indicate that the sidewalks in the area of

Pioneer Hall and the parking lot were reasonably clear of snow and ice.

> The Court finds that because the evidence indicates that Ms. Fast did not fall in the area of pooled water/ice, any duty [the State] might have had to take remedial measures in regard to the pooled area of water/ice which may have created a hazard for pedestrians is not a relevant issue of fact or law in this case.

[¶ 4] On appeal, the Fasts contend the district court erred in granting summary judgment because material issues of fact exist. Further, they contend the district court erred in finding the State did not owe a duty to Ms. Fast to take remedial measures with regard to the sidewalk.

## II

[¶ 5] Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record. *Iglehart v. Iglehart*, 2003 ND 154, ¶ 9, 670 N.W.2d 343.

> [S]ummary judgment ... is a procedural device under N.D.R.Civ.P. 56 for prompt and expeditious disposition of a controversy without a trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. On appeal, we review the evidence in the light most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences which reasonably can be drawn from the evidence.

*Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 5, 673 N.W.2d 257 (citations omitted).

[¶ 6] The party seeking summary judgment has the burden of showing no genuine issue of material fact exists. *Iglehart*, 2003 ND 154, ¶ 10, 670 N.W.2d 343. However,

the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

*Id.* (quoting *Anderson v. Meyer Broad. Co.,* 2001 ND 125, ¶ 14, 630 N.W.2d 46).

### A.

[¶ 7] Actionable negligence consists of a duty, breach, and an injury that was proximately caused by the breach. *Id.* at ¶ 11. Negligence actions are ordinarily inappropriate for summary judgment because they involve questions of fact. *Groleau v. Bjornson Oil Co., Inc.,* 2004 ND 55, ¶ 6, 676 N.W.2d 763. However, issues of fact may become issues of law if reasonable persons could reach only one conclusion from the facts. *Id.*

[¶ 8] MSU is a part of the state higher education system, and any claim against it is an action against the State governed by N.D.C.C. ch. 32–12.2. *Skjervem v. Minot State Univ.,* 2003 ND 52, ¶ 12, 658 N.W.2d 750. Under N.D.C.C. § 32–12.2–02(1), "[t]he state may only be held liable for money damages for . . . an injury caused from some condition or use of tangible property under circumstances in which the state, if a private person, would be liable to the claimant." Landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the

injury, and the burden of avoiding the risk. *Green,* 2004 ND 12, ¶ 8, 673 N.W.2d 257. If a landowner permits dangerous conditions to exist on the premises the landowner must take reasonable measures to prevent injury to those whose presence on the property reasonably can be foreseen. *Groleau,* 2004 ND 55, ¶ 16, 676 N.W.2d 763.

[¶ 9] In *Skjervem,* we considered an MSU student's claim that MSU negligently maintained its sidewalk because it did not attempt to correct a known hazardous condition. 2003 ND 52, ¶ 11, 658 N.W.2d 750. Skjervem was seeking damages for injuries suffered when she fell on ice that had accumulated on the sidewalk outside her campus apartment building. *Id.* at ¶ 2. Skjervem did not allege N.D.C.C. § 32–12.2–02(3)(f) impliedly created liability upon the State for icy conditions upon a sidewalk abutting a state-owned building or parking lot. *Id.* at ¶ 9. Section 32–12.2–02(3)(f) provides that the State is immune from "[a] claim resulting from snow or ice conditions, water, or debris on a highway or on a public sidewalk that does not abut a state-owned building or parking lot, except when the condition is affirmatively caused by the negligent act of a state employee." Instead, she claimed MSU negligently maintained its property because it had knowledge of a hazardous condition and did not correct it. *Skjervem,* at ¶ 13. We recognized:

Courts in other jurisdictions faced with similar circumstances have generally concluded that the state's immunity for design defects does not insulate the state in perpetuity, but the state may be liable if it has knowledge that it has created a hazardous condition and does not take reasonable measures to alleviate the danger.

*Id.* at ¶ 14. However, we did not decide whether we would follow those jurisdic-

tions because Skjervem failed to provide competent, admissible evidence in support of her assertion that MSU had knowledge of the alleged dangerous condition. *Id.* at ¶¶ 17–18. Similarly, we need not decide the issue in this case because the Fasts have not alleged the State should be liable based on the design of the sidewalk.

### B.

[¶ 10] In *Jackson v. City of Grand Forks*, the Court affirmed a verdict finding the city liable for injuries sustained after the plaintiff slipped and fell on ice located on a city sidewalk. 24 N.D. 601, 613, 140 N.W. 718, 721 (1913). The Court stated:

The general rule, and, we believe, the better rule, however, is that the liability should be based upon negligence and upon what is reasonable under the circumstances, paying attention to the climatic conditions. What would be reasonable, for instance, in Southern Illinois might not be reasonable in North Dakota or Montana; but reasonableness, and a reasonable regard for public safety, should be the criterion. The municipality under this rule is bound merely to exercise reasonable care and diligence to render the sidewalks safe. Where the sidewalk is properly constructed, the mere fact that it is rendered slippery by the presence of ice and snow will not in itself render the city liable for resulting injuries. Where, however, snow or ice is suffered to remain for a long time until it forms into mounds or ridges, and becomes itself an obstruction as it were to the sidewalk, or on account of its depth and quantity, a mass which in every thaw may be trampled into deep ruts and ridges which in the night following or in a close succeeding freeze may become dangerous and an occasion for further obstruction, the municipality may be held liable. It will be held liable, if not for the accumulation, then for not

using reasonable means, such as scattering sand, gravel, or ashes to prevent the danger.

*Id.* at 618, 140 N.W. at 723. In *Jackson*, the ice and snow had been allowed to accumulate throughout the winter and the Court mentioned that if it had not been allowed to become more dangerous than other sidewalks in the area, it would have had difficulty sustaining the verdict in favor of the plaintiff. *Id.* at 618–19, 140 N.W. at 723.

[¶ 11] Later cases have recognized a distinction between natural and artificial snow and ice accumulations on sidewalks abutting private property. The federal district court has interpreted North Dakota law as follows:

[A] property owner has no duty under North Dakota law to a pedestrian to remove a natural accumulation of snow and ice from the sidewalk abutting his property, but if he creates an unnatural condition on the sidewalk that is unreasonably dangerous, he may be liable for injuries caused thereby to pedestrians on the sidewalk.

*Lahren v. United States*, 438 F.Supp. 919, 922 (D.N.D.1977) (evaluating plaintiff's claim for damages as a result of injuries sustained when he crossed a ridge of snow extending onto the sidewalk in front of the Fargo post office).

This court, in *Clark v. Stoudt*, 73 N.D. 165, 12 N.W.2d 708 (1944), paragraph 4 of the syllabus, stated:

"Owners and occupants of property are not liable to a pedestrian for injuries resulting from a fall caused by slipping on snow and ice which, due to natural weather conditions, accumulated on the sidewalk in front of the property ..."

An exception to the general rule is that the abutting property owner or occupant

who constructs or maintains upon his property a canopy in such a manner as to cause an artificial discharge and accumulation of water upon the sidewalk, which, when frozen, makes the use of the sidewalk dangerous, will be held liable to one who, being rightfully upon the sidewalk, is injured in consequence of such dangerous condition.

*Strandness v. Montgomery Ward,* 199 N.W.2d 690, 691 (N.D.1972) (citations omitted). In *Clark* and *Lahren,* the primary duty regarding ice and snow accumulations was upon the municipality. 73 N.D. at 172, 12 N.W.2d at 711; 438 F.Supp. at 921. Although these cases involved accidents on municipal sidewalks, they are persuasive regarding the liability of a landowner, in this case the State, for injuries sustained as a result of snow and ice conditions.

### C.

[¶ 12] The Fasts do not rely upon N.D.C.C. § 32–12.2–02(3)(f), nor do they argue a design defect caused the slippery condition. Rather, they contend the State was negligent for failing to properly remove snow and ice accumulations from the sidewalk and warn individuals of the hazardous condition. They allege the State should be liable because it was aware that water pooled in the low area of the sidewalk and froze, creating a dangerous situation. The record does not support the Fasts' contention that Ms. Fast fell in the area of pooled ice, and mere knowledge that melting snow may run onto a sidewalk and freeze is not enough to expose a landowner, who has cleared the snow from the sidewalk, to liability. Although there may be instances where the State could be liable for injuries sustained as a result of a slip and fall on snow or ice, we agree with the district court that it should not be liable, absent some further act or omission creating an unreasonably

dangerous condition, "when injuries are sustained in falls where ice forms from melting snow that has been piled as a result of snow removal efforts." It is desirable for landowners to remove snow from sidewalks and they should not be liable for snow removal efforts that do not create an unreasonably dangerous or more hazardous condition. *See Otis v. Anoka–Hennepin Sch. Dist. No. 11,* 611 N.W.2d 390, 393 (Minn.Ct.App.2000) ("an accumulation of shoveled snow is a necessary, and desired, artificial condition"); *Miehl v. Darpino,* 53 N.J. 49, 247 A.2d 878, 881 (1968) ("Patently, some cleaning of snow is better than none. The public is greatly benefited [sic] even by snow removal which does not attain the acme of perfection of 'broom swept' streets"). We need not decide whether the snow and ice accumulation in this case was natural or artificial because, given the climate in North Dakota, it would be unreasonable and unduly burdensome to hold the State liable without some further act or omission on its part creating an unreasonably dangerous condition. *See Lahren,* 438 F.Supp. at 922 (the depositing of snow along the outer edge of the sidewalk did not create an unnatural, unreasonably dangerous condition that could result in liability). A review of the record reveals no competent, admissible evidence from which a reasonable fact finder could find the State liable for Ms. Fast's injuries.

[¶ 13] We affirm.

[¶ 14] CAROL RONNING KAPSNER, DALE V. SANDSTROM and WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, concurring in the result.

[¶ 15] The evidence indicates there was a snow storm on April 13, 2000, and April 14, 2000. The State cleared the sidewalk

sometime on the morning of April 14, 2000. The Fasts arrived at approximately 9:00 p.m. on April 14, 2000, and left their granddaughter's residence hall at approximately 1:00 a.m. on April 15, 2000. It was at that time that Marcia Fast slipped and fell on the sidewalk. There is no evidence the State negligently removed the snow from the sidewalk. There is no evidence the ice on the sidewalk was in existence for a long period of time. Therefore, I concur in the result that no jury could conclude under these facts that the State acted unreasonably in its removal of ice and snow.

[¶ 16]   Mary Muehlen Maring